ESTATE OF HARRY FORMAN, MILTON SANDERS, EXECUTOR v. COMMISSIONER OF INTERNAL REVENUE, Respondent
ESTATE OF FORMAN v. COMMISSIONER
Docket No. 905-76.
United States Tax Court
T.C. Memo 1978-510; 1978 Tax Ct. Memo LEXIS 2; 37 T.C.M. (CCH) 1851-94; December 27, 1978, Filed Harry Grossman, for the petitioner. Rudolph J. Korbel, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a dificiency in petitioner's Federal estate tax in the amount of $113,649.66, and a section 6651(a) [1] addition to tax in the amount of $5,682.48.Petitioner has now conceded liability for the "late filing" penalty under section 6651(a), and the parties have agreed upon the value of one of decedent's partnership interests, so that the only remaining issue before us *3 is to determine the fair market value of decedent's interest in three separate partnerships on the date of his death. [2]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. Harry Forman (hereinafter decedent) died on March 21, 1972, a resident of Forest Hills, New York. The executor of his estate, Milton Sanders (hereinafter petitioner), resided in New York, New York, at the time the petition herein was filed. Petitioner's Federal estate tax return was filed with the District Director in Brooklyn, New York. At the time of his death decedent owned, inter alia, interests in three partnerships.He owned a 20-percent partnership interest *4 in 20th Century Associates, a 20-percent partnership interest in Hotel Martinique Associates. Real estate is the principal underlying asset of the 20th Century Associates partnership. Such realty consists of two 5-story commercial buildings located at 468-470 West 23d Street in New York. These buildings are located in the southeast corner of 23d Street and 9th Avenue on approximately 4,549 square feet of land. The neighborhood is comprised of residential and commercial dwellings with numerous vacated and closed buildings on 22d and 23d Streets. Both buildings have brick foundations and brownstone facades. The 468 West 23d Street property functions as a five-story walkup apartment building with a store on the first floor. No vacancies exist in the building. The general condition of this building is fair notwithstanding considerable floor settlement. On the other hand, the 470 West 23d Street property has been damaged by multiple fires and is unfit for human habitation. This entire building is presently boarded up in compliance with a city ordinance. There were a number of comparable properties sold throughout 1972 and 1973. During *5 1972 properties at 198 Ninth Avenue and at 456 West 23d Street were sold for a total consideration of $91,600 and $140,223, respectively. Sales of properties in 1973 occurred at 454 West 23d Street and at 458-460 West 23d Street in the respective amounts of $145,000 and $360,125. The latter property was located approximately 66 feet to the east of the subject property. In addition to comparable sales, petitioner's expert relied upon an appraisal of the property's income potential which he calculated to be $126,000. Respondent's expert computed the fair market value of the 468-470 West 23d Street property at $387,000. This figure was based upon the average comparable sales during 1972 and 1973, allowing for a 20-percent increment attributable to the location of the subject property. Petitioner's expert arrived at the fair market value for this property by considering comparable sales in 1972 and by developing an income valuation approach, resulting in a valuation of $160,000. Decedent also held an interest in another real estate partnership known as West Associates. The principal underlying assets of said partnership *6 were seven apartment buildings comprised of six 5-story walkup tenements and one 4-story walkup tenement, located at 414-424 West 48th Street, New York, New York. The West 48th Street property is located approximately 225 to 250 feet west of 9th Avenue on 48th Street. The neighborhood's perimeter is from Ninth Avenue to the Hudson River and from West 45th to West 57th Street. Generally, the streets between Ninth and Tenth Avenues consist predominantly of four and five-story tenements interspersed with some loft buildings. In contrast, the streets between Tenth and Eleventh Avenues contain just the opposite mixture, with light industrial uses predominating. Tenth Avenue has numerous tenements with shops on the first floor. Schools, both public and parcohial, in addition to churches and hospitals, are within walking distance of the subject property. Buses furnish public transportation and operate on Ninth and Tenth Avenues and on 49th and 50th Streets. The seven buildings have stone foundations. Two of the seven tenement buildings are located at 414 West 48th Street. These two buildings are a 5-story and a 4-story tenement known as the front and rear buildings, respectively. *7 The front building, covering an area of 6,250 square feet, has no vacancy. Its general condition is in a state of repair and is presently in the possession of a tenant's association. The rear building, occupying an area of 3,000 square feet, is entirely vacant. A state of total disrepair exists as to its general condition, since the rear building has been stripped and looted by vandals. Similarly, the remaining five buildings at 416, 418, 420, 422, and 424 West 48th Street share the same dilapidated condition as the rear building. These properties have been severely vandalized with all kitchen and bathroom fixtures removed. In addition, the buildings have suffered multiple fires that have partially or, in some cases, completely destroyed the building's interior. Sales of comparable properties were analyzed for 1972, 1973, and 1976. In 1972 sales were recorded for properties at 434 West 49th Street, 449 West 48th Street, 30 West 48th Street, and 20 West 48th Street in the respective amounts of $53,000, $53,400, $235,000, and $1,650,000. Properties at 433 West 48th Street, 599-601 Ninth Avenue, and 587-597 Ninth Avenue were sold in 1973 for $48,000, $346,150, and $2,158,117, *8 respectively. Petitioner offered comparable sales in 1976 for properties located at 439-441 West 48th Street, 443 West 48th Street, and 449 West 48th Street in the respective amounts of $23,500, $23,500, and $35,100. No such comparable sales for 1976 were offered by respondent. During 1972 there was an upward pressure on prices of comparable real estate because of rampant speculation. This speculation was fueled by the prospect that the City of New York was to build a convention center near the subject property. When the plans for the center were canceled, real estate values plummeted causing 1973 values to be lower than 1972 values. Petitioner's expert discounts the fair market value of comparable sales from $20 per square foot to $15 per square foot to reflect this period of speculation. He also employed the income approach to supplement the market value approach in arriving at the fair market value of the 414-424 West 48th Street property. Respondent's expert, on the other hand, determined the fair market value of the subject property at $1,055,000. [3] This amount was based upon the market value approach of comparable sales. Petitioner's expert calculated the fair market *9 value of the property herein at $226,000 based upon both the income and market value approaches to valuation. Hotel Martinique Associates was another partnership which decedent held an interest in at the time of death. This partnership's principal asset is a leasehold in a 17-story hotel located at the southeast corner of Broadway and West 33d Street, New York, New York. The leasehold is for a term *10 of thirty years from March 1, 1957, to February 28, 1987. It contains no option to renew at the termination of the leasehold period. The neighborhood surrounding this property can be characterized as predominantly retail and commercial. A new office building is opposite the subject property at 32d Street and large department and chain stores are found in the area. Another hotel is adjacent to the subject property on the east and an older office building is contiguous on the north. In addition, several banks have also located in the immediate area. Public transportation is within walking distance. The hotel has a stainless steel marquee and two vertical neon hotel signs facing Broadway Avenue. It has a polished granite entry facade on 33d Street. The hotel has a subcellar and a basement, a first floor, with seven stores and a theatre, and a mezzanine. Floors two through sixteen comprise the hotel's guest quarters where some 550 hotel rooms are situated. The seventeenth floor has only vacant office space. Hotel Martinique's principal tenants are city welfare recipients who are provided temporary shelter until their relocation. These tenants comprise the bulk of the 80-percent *11 occupancy rate for the hotel. Management has made minimal repairs to the hotel and has no reserve for periodic fixture and furniture replacement. According to petitioner's expert, the leasehold interest is valueless. He employed a valuation methodology based upon a restructuring of the annual income and expense statements. The restructured statements for calendar years 1970 through 1973 depicted only the operational costs and the rental revenues including a provision for periodic fixture and furniture replacements and for a management fee. No effort was made by petitioner's expert to ascertain the rental value of the property by comparing rentals paid for comparable properties to the rental paid for the subject property.Thus, the valuation analysis [4] disclosed the following: *12 OPINION Respondent argues that the fair market value of decedent's partnership interest in 20th Century Associates, West Associates, and Hotel Martinique Associates, was at least $77,928.22, $197,575.50, and $153,609.97, respectively. For Federal estate tax purposes, partnership interests are generally valued in the same manner as other business interests under section 2031(a). [6] Accordingly, under section 20.2031-3, Estate Tax Regs., an administrative guideline for the valuation of partnership interests is stated. Such section provides, in pertinent part: *13 The fair market value of any interest of a decedent in a business, whether a partnership or a proprietorship, is the net amount which a willing purchaser, whether an individual or a corporation, would pay for the interest to a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. * * * In the instant case, the parties are in agreement that for each of the partnerships the interest of the decedent is includable in his gross estate at its fair market value. However, it is the determination of that value which creates a problem to the parties, for in order to accurately value the respective partnership interest the underlying partnership property itself must be valued. In the instant case, we hestiate to make a Solomon-like pronouncement on the fair market value of the properties but must make our best judgment under all the circumstances evident hereunder. Messing v. Commissioner, 48 T.C. 502, 512 (1967). While the parties recognize that the valuation of property is an inexact science, nevertheless *14 they have convinced themselves of the inalterable accuracy of their respective valuations and have failed to conclude settlement negotiations. We believe that valuation cases, like the instant one, should be settled by the parties who have far greater knowledge of all the surrounding facts and circumstances than this Court which has only a cold record and dry briefs upon which to base its conclusions. Cf. Estate of Maurice Gustave Heckscher v. Commissioner, 63 T.C. 485, 493 n. 3 (1975). The question of valuation is a subjective one and requires the Court to exercise its judgment in light of all the facts of the case. See Estate of Sallie Houston Henry v. Commissioner,4 T.C. 423, 447 (1944), affd. 161 F. 2d 574 (3d Cir. 1947). The burden of proof rests with petitioner. Welch v. Helvering,290 U.S. 111, 115; Rule 142(a), Tax Court Rules of Practice and Procedure.
At the trial of the instant case, each side to the dispute presented *15 an expert witness who had independently appraised the three partnership interests. We see no reason to dissect the experts' testimony and their appraisal reports. The experts who testified appeared well qualified as experts.
With respect to the 468-470 West 23d Street property, known as the 20th Century Associates partnership, we found the testimony of the respondent's expert more convincing. Petitioner's expert admitted to overlooking a comparable sale in his market approach that occurred at 458-460 West 23d Street--only 66 feet to the east of the subject property. Moreover, he also admits that greater reliance was placed upon the income approach resulting in a valuation of $126,000 under that method. Respondent did not use the income approach because when the comparable sale at 458-460 West 23d Street is viewed in conjunction with that approach, the gross rentals would approach an improbable amount. When one also considers that 50 percent of the subject property is vacant because of a previous fire, we are persuaded that the partnership bought and held the 468-470 West 23d Street property for its land value as opposed *16 to its income producing value. However, respondent's position was weakened by the fact that the comparable sale at 458-460 West 23d Street occurred in 1973, well beyond the date of decedent's death on March 21, 1972. Some appreciation of value undoubtedly occurred from the date of death to the date of sale of the comparable property. In addition, none of the buildings in the comparable property was destroyed by fire as was the case with the subject property. For all of the above reasons, we find that the 468-470 West 23d Street property had a fair market value of $275,000.
Similarly, the expert witnesses offered comparable sales as one method of valuation for the 414-424 West 48th Street property, known as the West Associates parthership.Because of real estate speculation in the immediate area of the subject property, property values were greater in 1972 than in 1973. Also, petitioner's expert demonstrated that an indicia of the declining property value in the area of the subject property was a comparable sale at 449 West 48th Street which sold for $53,000 in 1972 and later sold for $35,000 in 1976. Petitioner supplemented his comparable sales *17 approach with the income approach after discounting the $20 per square foot price to $15 per square foot to accomodate the reality of the market trend. We also note that of the seven tenement buildings which comprise the subject property, six are vacant because of recurring fires and pillaging by vandals. Respondent, on the other hand, disregarded both the market trend and the fact that only one building had income producing potential. Respondent's expert focused on comparable sales that occurred on 48th Street between 5th and 6th Avenues as "ideal" comparative sales. These sales took place in the central business district of Manhattan in contrast to the subject property which is located in a slum area. Such sales are not comparable. Consequently, when all of the preceding factors are considered, we find that the 414-424 West 48th Street property has a fair market value of $350,000. The value of the leasehold interest in the Hotel Martinique held by Hotel Martinique Associates presented the most challenging valuation problem to the parties. Petitioner's expert valued the leasehold interest at $0 whereas respondent's expert determined its value at $418,000. The basis for *18 this material discrepancy is clear from the record. Respondent argues that no provision is necessary for fixture and furniture replacement. He further contends that a management fee is an irrelevant consideration in view of the salaries normally deducted in the operation of a hotel. Both parties are in agreement, however, that the measure of the leasehold value is the present-day discounted worth of the sum of the annual differentials for the remaining lease term. Similarly, for 1973, both parties have arrived at a net income from operations of $58,202. The validity of a fixture and furniture reserve for a hotel that has a majority of transient tenants and a minimal maintenance program does not seem unreasonable. It merely reflects the "adjusted" operating income of a hotel after considering the useful life expectancy of fixtures and furniture. Notwithstanding the neglect by the present owners to provide for such a reserve, an appraiser should consider this fact of economic life in the operation of a hotel. Therein lies the weakness of respondent's valuation. On the other hand, the management "fee" which petitioner determines is indispensable to the operation of a hotel is *19 a flaw in his valuation. In the instant case, the owner managed the hotel. Petitioner argues that if the owner manages the hotel, and becomes in effect a surrogate manager, his salary must be expensed as if he were an employee-manager. A disturbing feature of petitioner's argument is that it assumes a constant five-percent compensation notwithstanding the hotel's declining profitability from 1970 through 1972. As respondent's expert testified, most hotel managers are very poorly paid. Ordinarily, they are paid a salary and provided with a suite. The respondent's expert indicated in his testimony that the total compensation for a manager at the Hotel Martinique would be approximately $20,000. While we acknowledge the necessity of a reserve for fixture and furniture replacement, we do not agree with petitioner in his computation of an annual management fee of five percent. It appears that $20,000 is a fair amount in 1973 for services rendered by a hotel manager in the instant case. Of this amount, $10,000, in our judgment, is the sum properly expensed against income in 1973 for management services. For all of the above reasons, we find that the fair market value of the leasehold *20 interest in the Hotel Martinique property is $30,000.
Because of all the factors and circumstances here present, we have reached the result that we agree with neither petitioner nor respondent. On the basis of the entire record we hold that the three partnership interests of 20 percent in 20th Century Associates, 20 percent in West Associates, and 27.78 percent in Hotel Martinique Associates, held by decedent upon the date of his death, were properly valued at $55,000, $70,000, and $8,334, respectively. Because of concessions, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954. ↩
2. Petitioner also apparently concedes that the leasehold interest in decedent's apartment is fully includable in his gross estate and that the allowable marital deduction for decedent's estate is in the amount of $10,000, since petitioner has failed to prove otherwise by offering any proof, either at trial or on brief, with respect to these two issues. See Rule 142(a), Tax Court Rules of Practice and Procedure.↩
3. It is unclear from respondent's appraisal of the 414-424 West 48th Street property whether all the buildings were considered thereunder. Respondent's expert viewed the property as comprised of six buildings occupying a plot of 15,075 square feet. To the contrary, the parties stipulated that the property contained seven buildings. We note that petitioner's expert based his appraisal of the subject property on seven buildings occupying an area of 15,062 square feet and clearly identified each such building. This patent ambiguity in respondent's appraisal was not clarified at the trial. Moreover, this ambiguity was further exacerbated by respondent's request for a finding of fact in his brief that the underlying assets of the subject property consisted of three buildings.↩
4. Petitioner's valuation analysis has several mathematical errors. The correct figures for years 1970 through 1972 are as follows: 1970
1971
1972
Net before Management &
Replacement Revenues:
$57,727 $ 2,873
[22,735)
Net for Capitalization:
[33,623)
[86,818)
[109,619)
VALUATION ANALYSIS
HOTEL MARTINIQUE - 1266 BROADWAY, NYC
1970
1971
1972
1973
Income:
$947,140
$913,823
$857,691
$1,038,270
Expense: Total Expenses before Management
Fee & Replacement Reserve for
Fixtures & Furniture:
889,413
910,950
880,426
980,068
Net before Management &
Replacement Reserves:
57,733
2,773
(22,737)
58,202
Management Fee, 5%:
(47,350)
(45,691)
(42,884)
(51,913)
Replacement Reserve: 550 rooms X $800/rm = $440,000
$440,000 / 10 years =
(44,000)
(44,000)
(44,000)
(44,000)
NET FOR CAPITALIZATION:
[33,617)
[86,918)
[109,661)
[37,711)
Respondent's expert placed a value of $418,000 on the leasehold interest.His analysis is founded on the assumption that the value of the leasehold arises from the margin of the economic productivity of the property, subject to the terms of the lease. The $418,000 valuation represents the present value of $58,202 (net rental value in 1973) for 15 years capitalized at 11 percent. Respondent's valuation does not consider comparable rentals paid for comparable properties, replacement provisions for fixtures and furniture, or management fees.
On the Federal estate tax return that was due on December 21, 1972, but filed on behalf of decedent's estate on January 11, 1973, the three partnership interests of 20 percent in 20th Century Associates, 20 percent in West Associates, and 27.78 percent in Hotel Martinique Associates, held by the decedent upon the date of his death, were valued at $17,074.19, $1,631.82, and $55,191.94, respectively. Petitioner concedes on brief that the value of decedent's 20-percent interest in West Associates should be $21,956.63 and not $1,631.82, which represents decedent's share of the partnership's tax preference investment expense. In addition, petitioner states in his brief that the value of decedent's 27.78-percent interest in Hotel Martinique Associates should be $0 and not $55,191.94.
[5]↩ Respondent, in his statutory notice of deficiency, attributed values to the respective partnership interest in 20th Century Associates, West Associates, and Hotel Martinique Associates of $77,928.22, $197,575.50, and $153,609.97. 6. SEC. 2031.DEFINITION OF GROSS ESTATE. (a) General.--The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.↩